UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TRAFFIC SPORTS USA,

                      Plaintiff,                          REPORT AND
                                                                       RECOMMENDATION
   -against-                                       11 CV 643 (ARR) (RML)

ANGELS LOUNGE & NIGHT CLUB LLC
d/b/a ANGELS LOUNGE & NIGHT CLUB,

                      Defendant.
------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated June 30, 2011, the Honorable Allyne R. Ross, United States District Judge, referred plaintiff's motion for a default judgment against defendant Angels Lounge & Night Club LLC d/b/a Angels Lounge & Night Club ("defendant" or "Angels Lounge & Night Club") to me for a report and recommendation. For the reasons stated below, I respectfully recommend that plaintiff's motion be granted and that plaintiff be awarded a total of $13,188.00 in damages and $470.00 in costs.

## BACKGROUND AND FACTS

        Plaintiff Traffic Sports USA ("plaintiff" or "Traffic Sports") brought this action on February 9, 2011 under the Communications Act of 1934, as amended, 47 U.S.C. §§ 553, 605 (1996). Plaintiff alleges that defendant violated the Communications Act by procuring or receiving pay-per-view cable television service without authorization or consent. (Complaint, dated Feb. 9, 2011 ("Compl."), ¶¶ 14-15, 18.) After defendant failed to appear or answer in this action, plaintiff moved for entry of a default judgment. On June 30, 2011, Judge Ross referred the motion to me. (Corrected Order, dated June 30, 2011.) By order dated June 30, 2011, I gave the plaintiff the opportunity to supplement its inquest submission on or before July 29, 2011 and

directed defendant to file any opposition on or before August 26, 2011. (Order, dated June 30, 2011.) To date, the court has received no communication from defendant.

Plaintiff has demonstrated that defendant was properly served with the Summons and Complaint. (See Affidavit of Service of Gerald Murray, sworn to Mar. 15, 2011; Affidavit of Service of Steven Avery, sworn to June 8, 2011; see also Affirmation of Paul J. Hooten, Esq., sworn to June 28, 2011 ("Hooten Aff."), ¶ 1.) In addition, a Clerk's Certificate confirms that defendant has not filed an answer or otherwise moved with respect to the complaint, and that the time to do so has expired. (Clerk's Certificate, dated June 28, 2011.) I therefore respectfully recommend that plaintiff's motion for a default judgment be granted.

It is well-settled that a defaulting defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 487 (S.D.N.Y. 1999); Time Warner Cable of New York City v. Olmo, 977 F. Supp. 585, 587 (E.D.N.Y. 1997). Plaintiff's allegations are as follows:

Plaintiff is a Florida corporation that owns the exclusive commercial distribution rights to the telecast of the February 11, 2009 CONCACAF World Cup Qualifier Tournament, including, but not limited to, the Costa Rica v. Honduras World Cup Qualifier Game (collectively, "the Event") "throughout New York and other geographic locales." (Compl. ¶ 7.) The Event was transmitted as an electronically-coded or "scrambled" signal via satellite broadcast and closed-circuit television. (Plaintiff's Memorandum of Law in Support of Request for Judgment by Default, dated June 28, 2011 ("Pl.'s Mem."), at 2.) For a fee, a commercial

customer was provided with decoding equipment and satellite coordinates that would allow it to display the unscrambled telecast. (Id. at 2-3.)

Defendant is a business located at 990 Broadway, Brooklyn, New York. (Compl. ¶ 5.) On February 11, 2011, Plaintiff sent an independent auditor, Victor Perez, to defendant's establishment. (Affidavit of Victor Perez, sworn to Feb. 12, 2011 ("Perez Aff."), attached to Hooten Aff. as Exhibit B.) Between 9:00 p.m. and 9:30 p.m., while inside defendant's establishment, Perez observed the Event displayed on one television and noted that there were approximately eighty patrons in attendance.[1] (Id.) Defendant had not contracted with plaintiff to receive or display the Event, and it was not otherwise authorized to do so. (Compl. ¶¶ 12, 18.) Plaintiff asserts that defendant could not have obtained transmission of the Event without undertaking specific wrongful actions to receive and broadcast the telecast. (Pl.'s Mem. at 6.)

Plaintiff presently seeks a judgment of $48,061.12, consisting of statutory damages, actual damages, enhanced damages, prejudgment interest, and costs.

### DISCUSSION

A. Statutory Damages

47 U.S.C. § 605(e)(3)(C)(i)(II) allows for statutory damages for "each violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." The amount of damages assessed pursuant to § 605 rests within the sound discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II); see also Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993).

---

[1] Perez made three headcounts between 9:00 p.m. and 9:30 p.m., finding sixty, seventy, and "80 plus" patrons, respectively. (Perez Aff.)

Most courts faced with the unauthorized commercial receipt of a pay-per-view program have assessed statutory damages based on the number of patrons in the establishment at the time of transmission. See Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosa, Inc., No. 10–CV–108, 2011 WL 889474, at *5 (E.D.N.Y. Feb. 14, 2011) (awarding $54.95 per patron for the 150 patrons present at an unauthorized broadcast); J & J Sports Prods., Inc., v. Hot Shots, Inc., No. 09–CV–1884, 2010 WL 3522809, at *2 (E.D.N.Y. Apr. 27, 2010) (assessing damages based on a per-person charge for forty to fifty patrons present); Traffic Sports USA, Inc. v. Segura, No. 06-CV-3360, 2008 WL 4890164, at *7 (E.D.N.Y. Nov. 12, 2008) (awarding $50 per patron for unauthorized display of pay-per-view soccer match); Googies Luncheonette, 77 F. Supp. 2d at 490 (awarding same for pay-per-view boxing match). As one court has explained, the per-patron valuation "is based on a theory of rough justice" that the patrons viewing the event without access to the unauthorized showing "would have ordered it themselves [at a cost of approximately $50 each]." Id. "Plaintiff is thus fully compensated for any loss it suffered," and defendant "reap[s] no benefit from unlawful action." Id.

Numerous decisions in this district have used as the base per-patron valuation the residential fee for the program, and multiplied that amount by the number of patrons in the establishment. See, e.g., Segura, 2008 WL 4890164, at *7; Garden City Boxing Club, Inc. v. Rosado, No. 05–CV–1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005). This calculation is based on the assumption that each patron would have paid to view the fight from home had he or she not had access to a broadcast at defendant's establishment. See Garden City Boxing Club, Inc. v. Bello, No. 05–CV–1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005).

Plaintiff did not provide information regarding the residential fee for the broadcast

4

of the Event. In similar cases, however, judges in this district have awarded damages based on a residential fee of $54.95. See, e.g., J & J Sports Prods., Inc. v. Arhin, No. 07–CV–2875, 2009 WL 1044500, at *6 (E.D.N.Y. Apr. 17, 2009) (the "typical purchase price for a pay-per-view broadcast of this nature is $54.95"); Kingvision Pay–Per–View Ltd. v. Cazares, No. 05–CV–2934, 2006 WL 2086031, at *3–4 (E.D.N.Y. July 25, 2006) (adopting recommendation of statutory damage award based on $54.95 residential rate); Rosado, 2005 WL 3018704, at *4 (recommending statutory damage award of $989.10 based on $54.95 for each of the eighteen patrons observed in the establishment); Bello, 2005 WL 2496062, at *3 (recommending statutory damages based on $54.95 residential rate). Additionally, plaintiff was likely aware of the district's practice of using the $54.95 rate, as it appears that plaintiff used that rate to calculate defendant's alleged profits. (See Hooten Aff. ¶ 19.)

I find the per-patron valuation appropriate here. According to the investigator's affidavit, there were approximately eighty patrons present during the broadcast of the Event. (Perez Aff.) Eighty multiplied by $54.95 leads to an award of $4,396.00, over four times the statutory minimum. I therefore recommend that plaintiff be awarded $4,396.00 in statutory damages.[2]

### B. Enhanced Damages

Under the Communications Act, a court also has discretion to award plaintiff enhanced damages of not more than $100,000 if it finds "that the violation was committed

---

[2] Under 47 U.S.C. § 605(e)(3)(C)(I), a plaintiff may elect to recover either statutory or actual damages for a defendant's violation of 47 U.S.C. § 605(a). Here, plaintiff claims it can prove actual damages, but also asks the court to "highly consider the statutory damages . . . ." (Hooten Aff. ¶¶ 14, 15.) After reviewing plaintiff's calculations for actual damages – which are speculative at best – I find that statutory damages are more appropriate in this case.

willfully and for purposes of direct or indirect commercial advantage or private financial gain." 42 U.S.C. § 605 (e)(3)(C)(ii). Willfulness is defined as "disregard for the governing statute and an indifference for its requirements," Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985), and is established by the fact that an event is broadcast without authorization. See Googies Luncheonette, 77 F. Supp. 2d at 490 ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages. These factors include consideration of whether defendant committed repeated violations over an extended period of time, whether defendant received substantial monetary gains from the display, whether defendant advertised the broadcast, whether defendant charged an admission fee or charged premiums for food and drinks, as well as consideration of any significant actual damages sustained by the plaintiff. Kingvision Pay-Per-View, Ltd. v. Vibes Sports Bar and Café, Inc., No. 10–CV–127, 2011 WL 1331858, at *4 (E.D.N.Y. Mar. 15, 2011). Further, the court may draw an inference of willfulness from defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. See Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983).

In this case, Angels Lounge & Night Club never contracted for the right to broadcast the Event, and, accordingly, was not authorized to intercept, receive or transmit communication thereof. (Compl. ¶¶ 12, 18.) Because the Event was broadcast using an encoded transmission, it could only have been displayed at defendant's establishment by the use of an illegal decoding device or some other unlawful means. (Pl.'s Mem. at 6.) A number of the willfulness factors are also present. Defendant profited approximately $1,600.00 by charging

6

each of the estimated eighty patrons $20.00 for admission. (Hooten Aff. ¶ 19.) The independent auditor noted that posters advertising the Honduras vs. Costa Rica match were displayed on a door in the establishment. (Perez Aff.) Further, plaintiff sustained actual damages because defendant did not pay a sub-licensing fee. (Hooten Aff. ¶ 18). I therefore find that defendant's conduct in receiving the broadcast of the Event was willful.

In light of the circumstances surrounding the display, I respectfully recommend that plaintiff receive an enhanced damages award of $8,792.00, or two times the basic statutory damages, for defendant's willful violation of the Communications Act.[3] See, e.g., J & J Sports Prods., Inc. v. Welch, No. 10–CV–0159, 2010 WL 4683744, at *5 (E.D.N.Y. Nov. 10, 2010) (finding appropriate an award of $9,341.50, or two times the amount of basic statutory damages, for defendant's willful violation); Entm't by J & J Inc. v. Nina's Rest. and Catering, No. 01–CV5483, 2002 WL 1000286, at *3 (S.D.N.Y. May 9, 2002) (awarding an enhancement of two times the damages award for willfulness); Kingvision Pay–Per–View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (awarding $5,000 in basic statutory damages and $10,000 in enhanced damages); see also Kingvision Pay–Per–View Ltd. v. Olivares, No. 02–CV–6588, 2004 WL 744226, at *4 (S.D.N.Y. Apr. 5, 2004) ("Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize a defendant for willful acts").

---

[3] Plaintiff requested that enhanced damages be assessed at three times the basic statutory damages. (Hooten Aff. ¶ 28.) However, I find that under the circumstances of this case, calculating enhanced damages at two times the statutory amount is more appropriate. In so recommending, I note that the enhanced damage award is close to the amount plaintiff would have received had it been awarded damages based on defendant's unlawful profits from charging admission, and plaintiff's loss of a sub-licensing fee and alleged losses of "goodwill, reputation, and future revenue." (Hooten Aff. ¶¶ 18-19, 21.)

C. Pre-judgment Interest

Plaintiff also seeks $8,345.12 in interest, calculated at a rate of nine percent (9%) per annum, for the period of February 11, 2009 through the filing date of its motion. (Hooten Aff. ¶ 30.) 42 U.S.C. § 605 does not expressly provide for interest, but "[t]he Second Circuit has recognized that prejudgment interest may be permitted in the absence of express statutory authorization 'when the awards [are] fair, equitable and necessary to compensate the wronged party fully.'" Garden City Boxing Club, Inc. v. Rojas, No. CV-05-1047, 2006 WL 3388654, at *9 (E.D.N.Y. Nov. 21, 2006) (quoting Wickham Contracting Co., Inc. v. Local Union No. 3, IBEW, 955 F.2d 831, 836 (2d Cir.), cert. denied, 506 U.S. 946 (1992)). However, "the majority of courts to have considered the issue have denied an award of prejudgment interest on the grounds that '[s]tatutory damages under the Communications Act are analogous to punitive damages in that they are designed to deter others from similar infringing activity.'" Hot Shots, Inc., 2010 WL 3522809, at *3 (internal citations omitted). In light of the award of enhanced damages, I find that an award of prejudgment interest would be inappropriate here. I therefore respectfully recommend that plaintiff's request for prejudgment interest be denied.

D. Costs

As the prevailing party, plaintiff is also entitled to an award of reasonable attorney's fees and costs in this action. 47 U.S.C. § 605(e)(3)(B)(iii). However, plaintiff only seeks to recover costs. (Hooten Aff. ¶¶ 30-31.) Plaintiff calculates its costs as $470.00, which includes the $350.00 filing fee and $120.00 in process server fees. (See Plaintiff's Statement of Damages, dated June 28, 2011.) The costs for filing fees and service of process are reasonable and I recommend that plaintiff be awarded $470.00 in costs.

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiff be awarded $13,188.00 in damages and $470.00 in costs. Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Ross and to my chambers, within fourteen (14) days. Failure to file objections within the specified time period waives the right to appeal the district court's order. See 28 U.S.C. § 636(b) (1); see also Fed.R.Civ.P. 72, 6(a), 6(e).

Plaintiff's counsel is directed to serve a copy of this Report and Recommendation on defendant.

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
October 14, 2011